IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Status Solutions LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>4Front Technologies, Ltd., *et al.*,<br><br>　　　　Defendants. | Case No. 2:23-cv-2047<br><br>Judge Sarah D. Morrison<br><br>Magistrate Judge Chelsey M. Vascura |

### MOTION TO DISMISS OR ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT OF DEFENDANTS 4FRONT TECHNOLOGIES, LTD. AND SHAWN TOFTE

　　Status Solutions LLC's ("Status Solutions") Complaint omits requisite facts while obfuscating others. Because Status Solutions fails to identify the trade secrets that were allegedly misappropriated, fails to sustain the elements of its trade secret claims, fails to assert cognizable loss for its computer fraud claims, fails to avoid preemption of its state law claims, and fails to establish the elements of state law claims, Fed. R. Civ. P. 12(b)(6) warrants full dismissal of Status Solutions' Complaint. Alternatively, Fed. R. Civ. P. 12(e) necessitates a more definite statement.

　　A memorandum in support is attached hereto and incorporated herein.

Respectfully submitted,

/s/ David J. Butler
David J. Butler (0068455), Trial Attorney
Amy D. Vogel (0075169)
TAFT STETTINIUS & HOLLISTER LLP
41 S. High Street, Suite 1800
Columbus, Ohio 43215-4213
Phone: (614) 221-2838
Fax: (614) 221-2007
dbutler@taftlaw.com
avogel@taftlaw.com


/s/ Thomas G. Pasternek
Thomas G. Pasternak*
Jani K. Mikel**
Akerman LLP
71 South Wacker Drive, 47th Flr.
Chicago, IL 60606
Phone: (312) 634-5700
Fax: (312) 424-1900
thomas.pasternak@akerman.coom
jani.mikel@akerman.com


\* Admitted *pro hac vice*

\** Seeking pro hac vice admission

*Counsel for Defendants 4Front Technologies, Ltd. and Shawn Tofte*

MEMORANDUM IN SUPPORT

The only things misappropriated in this trade secret case are the identity of the trade secrets themselves. Status Solutions' abject failure to describe the alleged trade secrets at issue, to allege colorable loss, and to establish the independent nature of its tort claims renders dismissal not only proper, but necessary.

Alternatively, the Court should order Status Solutions to lodge a more definite statement identifying (1) the alleged misappropriated trade secrets with requisite particularity; and (2) the specific software or system allegedly accessed without authorization and whether Status Solutions or its customers own such software or system.

I. FACTUAL BACKGROUND

In October 2012 Defendants contracted with Status Solutions to permit Defendants to sell Status Solutions' software programs to selected clients. (Cmpl., ¶¶ 4, 17.) A copy of the contract is attached as Exhibit A.[1] One such program was Situational Awareness and Response Assistant ("SARA")—an "integrated alarm management and mass notification emergency call system." (*Id.*, ¶ 3.)

After working with Defendants for almost nine years without incident, Status Solutions terminated the contract in May 2021. *Id.*, ¶ 5. A copy of the termination

---

[1]  The contract is not attached to the Complaint. Nevertheless, the Court may consider the contract because it is are "'referred to in the plaintiff's complaint and [is] central to [its] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993)).

letter is attached as Exhibit B.[2] The letter does not state the basis for the termination. Nor does it state or imply that the contract was terminated due to "Defendants' failures to act in the best interest of Status Solutions." (Ex. B.; Cmpl., ¶ 5.)

Years passed. Then, in June 2023, Status Solutions alleged via a Cease and Desist Letter that Defendants accessed SARA to access information they were not entitled to. (Cmpl., Ex. A.) After allowing just three days to respond, Status Solutions filed this suit asserting the following claims: (1) misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ("DTSA"); (2) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"); (3) misappropriation of trade secrets under R.C. § 1333.61 *et seq.* ("OUTSA"); (4) unfair competition; (5) tortious interference with contractual relations; and (6) tortious interference with business relations. Each should be dismissed.

## II. ARGUMENT

### A. Status Solutions' Inability to Establish the Existence or Misappropriation of its Alleged Trade Secrets Mandates Dismissal of its DTSA and OUTSA Claims.

Dismissal of Status Solutions' trade secret claims is warranted for four reasons. First, Status Solutions does not identify or describe its purported trade secrets. Second, Status Solutions fails to detail the steps it took to protect its

---

[2] Like the contract, the termination letter is mentioned in, and central to, the Complaint but is not attached as an exhibit to that pleading. The Court may consider the termination letter under *Weiner*.

alleged trade secrets. Third, Status Solution fails to establish it had a confidential relationship with Defendants at the time of the alleged appropriation. And fourth, Status Solutions' conclusory legal allegations cannot show that Defendants lacked authorization to use the alleged trade secrets.

DTSA and OUTSA claims are considered together "because the definition and requirements of both statutes are essentially the same." *Mech. Constr. Managers, LLC v. Paschka*, 2022 U.S. Dist. LEXIS 90045, No. 3:21-cv-302, at *27 (S.D. Ohio May 19, 2022) (Rice, J.); *see also Ridge Corp. v. Altum LLC*, No. 2:21-cv-5915, 2023 U.S. Dist. LEXIS 19926, at *5-6 (S.D. Ohio Feb. 3, 2023) (Morrison, J.) To prevail under those statutes, Status Solutions must sufficiently allege (1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret or the acquisition of a trade secret by improper means. *Pro. Investigation & Consulting Agency, Inc. v. SOS Sec., LLC*, 2023 U.S. Dist. LEXIS 49175, No. 2:19-cv-3304, at * 11-12 (S.D. Ohio, Mar. 22, 2023) (Marbley, C.J.).

Under Ohio law, a trade secret is defined as

> information...that satisfies both of the following: (1) [i]t derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use [; and] (2) [i]t is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Kondash v. Kia Motors America, Inc.*, 767 Fed.Appx.635, 638-39 (6th Cir. 2019) (citing R.C. § 1333.61(D)(1)-(2)). The following factors are considered when determining whether a trade secret exists:

- 3 -

> (1) [t]he extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, *i.e.*, by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 400, 732 N.E.2d 373 (2000).

"There is…no presumption that information is a trade secret," and the onus is on Status Solutions to prove it takes "active steps to maintain the secrecy" of its alleged trade secrets. *In re Urgent Medical Care, Inc.*, 153 B.R. 784, 788 (S.D. Ohio 1993) (citing *Water Mgt., Inc. v. Stayanchi*, 15 Ohio St.3d 83, 83, 472 N.E.2d 715 (1984)). Even when viewing the allegations in the light most favorable to Status Solutions, Status Solutions cannot establish any misappropriation occurred here.

### 1. Status Solutions Fails to Identify its Alleged Trade Secrets with the Required Specificity.

First, Status Solutions' blithely defining its trade secrets as its "software and clients" is insufficient. (Cmpl., ¶ 27). Instead, Status Solutions is "required to identify the information it claims is a trade secret 'with specificity to separate the secret from general knowledge' or other forms of unprotected information." *Ridge Corp.*, 2023 U.S. Dist. LEXIS 19926, at *6 (quoting *AtriCure, Inc. v. Jian Meng*, 842 F. App'x 974, 980 (6th Cir. 2021)). Under this Court's holding in *Ridge*, then, Status Solutions' bald allegations do nothing but "allege that [Status Solutions] had a secret" and fail to identify the information it maintains qualifies as a trade secret

with the requisite specificity such that dismissal of the trade secret claims is required under Rule 12(b)(6). *Ridge Corp.*, 2023 U.S. Dist. LEXIS 19926, at \*7 (quoting *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 661 (4th Cir. 1993)).

### 2. Status Solutions Fails to Identify the Measures it Allegedly Took to Safeguard its Alleged Trade Secrets.

Assuming, arguendo, that Status Solutions has sufficiently detailed its trade secrets, it has not alleged or even estimated the amount of effort or money it expended in obtaining and developing the information, the amount of time and expense it would take for others to acquire and duplicate the information, or the value of holding the alleged trade secrets. Sure, Status Solutions vaguely asserts that it spent significant time, money, labor and devoted substantial resources to developing this information and that companies like Defendants were required to sign unspecified confidentiality agreements. (Cmpl. ¶¶ 29, 54.) But this Court has implicitly held that more is required to satisfy the second *Kondash* element of reasonable efforts to protect the secrecy of the trade secrets. Specifically, in *Ridge Corp.*, this Court denied a Rule 12(b)(6) motion seeking dismissal of trade secret claims. In so holding, this Court noted that the complaint: (1) "identifie[d] specific steps" that the plaintiff "took to secure information" about the alleged trade secrets; (2) specified only a small number of people had access to the trade secrets; (3) asserted that code names were used when discussing the trade secrets; (4) alleged those with access to the secrets were prohibited from sharing them under the employee handbook; and (5) stated that those who disclosed the trade secrets were subject to termination. *Ridge Corp.*, 2023 U.S. Dist. LEXIS 19926, at \*7-8. Status

Solutions' Complaint does not allege any of those safeguards were present here. *Id.*, ¶ 29. Thus, the Complaint fails to establish that Status Solutions expended reasonable efforts to maintain the secrecy of its claimed trade secrets. Status Solutions' trade secret claims should be dismissed.

### 3. Status Solutions Fails to Establish it had a Confidential Relationship with Defendants at the Time of the Alleged Misappropriation.

Status Solutions further neglects to establish that Defendants acquired the alleged trade secrets as a result of a confidential relationship. Indeed, Status Solutions does not even allege it had a confidential relationship with Defendants. *See* Cmpl. Instead, Status Solutions alleges that it terminated its relationship with Defendants on May 7, 2021. (Cmpl., ¶ 18). It further alleges that the purported trade secrets were misappropriated two years later in June 2023. *Id.*, ¶ 9. As such, Defendants were not in a confidential relationship when the alleged misappropriation occurred. The trade secret claims should be dismissed.

### 4. Status Solutions Fails to Show Defendants Lacked Authorization.

Lastly, Status Solutions fails to sufficiently allege that Defendants used Status Solutions' alleged trade secrets without authorization. Status Solutions alleges that "Defendants used and continued to use Status Solutions' confidential and trade secret information…to obtain a business advantage…and to entice Status Solutions' clients to terminate their contracts with Status Solutions." (Cmpl., ¶ 32). Yet, Status Solutions does not provide any facts to establish what information was used, how it was used, when it was used, or why it was used. Status Solutions'

- 6 -

"conclusory legal allegations" are not accepted as true. *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). Hence, the Complaint lacks the necessary factual predicate and does not satisfy the third *Pro. Investigation* requirement. Dismissal of Status' Solutions trade secret claims is appropriate.

### B. Alternatively, Rule 12(e) Mandates a More Definite Statement.

Ordering elaboration under Rule 12(e) is necessary when "a pleading to which a response is permitted is so vague or ambiguous that the moving party cannot reasonably be required to frame a responsive pleading." Put differently, where, as here, the Complaint does not provide "fair notice of the claims," relief under Rule 12(e) is proper. See *Spirex Corp. v. Telar Corp.*, N.D. Ohio No. 1:08 CV 2458, 2009 U.S. Dist. LEXIS 149391, at *4 (Apr. 30, 2009) (Rule 12(e) applies to situations where pleading fails to provide fair notice.).

Status Solutions' alleged "trade secrets must be described with enough specificity to put the adverse party on notice what it is alleged to have misappropriated." *Mareiners, LLC v. Anomatic Corporation,* No. 2:22-cv-3433, 2023 WL 5029177, at *3 (S.D. Ohio Aug. 8, 2023) (Jolson, M.J.). Status Solutions generic reference to "software and clients" does not satisfy that requirement. (Cmpl., ¶ 27).

Throughout its Complaint, Status Solutions uses such nebulous descriptions of its alleged trade secrets as "confidential and trade secret information relating to its clients" (Cmpl., ¶ 32); "proprietary and client information" (Cmpl., ¶ 38); and "Status Solutions['] confidential and proprietary information including, but not limited to, access to Status Solutions' Trade Secrets." (Cmpl., ¶ 45). Vague

- 7 -

descriptions such as those are insufficient. *A.B. Pratt & Co. v. Bridgeport Group, LLC*, 2023 WL 2865640, at *26 (N.D. Ohio Apr. 10, 2023) (Barker, J.) (citation and internal quotations omitted) ("Though a party need not reveal its secrets in the complaint simply to prove that they exist, a party cannot get away with nebulous descriptions at the highest level of generality."). None of the Complaint's vague and general assertions are sufficient to put Defendants on notice of what is alleged to have been misappropriated.

Status Solutions' allegations that categories of "clients" and "software" constitute trade secrets raise several questions: Which of its multiple software and products is Status Solutions alleging is a trade secret? Are the software and products as whole alleged to be a trade secret or is it a specific portion, design or process within the software and/or product that constitute the alleged trade secret? None of this is clear. Moreover, the term "clients" is incredibly vague and implies that Status Solutions is alleging that its clients, which are independently formed and known corporate entities, are trade secrets—which is insufficient under Ohio law. *In re Urgent Medical Care, Inc.*, 153 B.R. at 788 (finding that a client list, absent additional information, does not constitute a trade secret). An order under Rule 12(e) requiring Status Solutions to define its trade secrets in a manner providing fair notice to Defendants is therefore warranted.

Furthermore, it is unclear whether Status Solutions is even the owner of the alleged trade secrets. Status Solutions' entire suit is based on the allegations that Defendants "accessed SARA and downloaded information" of several unknown

clients. (Cmpl., ¶ 7). Yet, Status Solutions alleges that it "produces and licenses" SARA, not that it owns SARA. (*Id.*, ¶3). Status Solutions further asserts that Defendants were permitted to market, sell, and install Status Solutions' products. (*Id.*, ¶ 4). Status Solutions' claim of ownership is inconsistent with its own allegations that it licenses and sells SARA and its other products to its clients. This Court should therefore utilize Rule 12(e) to order Status Solutions to provide a more definite statement clarifying the ownership of the trade secrets that were allegedly misappropriated.

### C. Dismissal of the CFAA Claim is Required Because Status Solutions Fails to Establish it Suffered Any Loss or Damage.

Status Solutions' sole allegation of damages is lost revenue. (Cmpl., ¶ 40.) But lost revenue is not recoverable under the CFAA. *Am. Family Mut. Ins. Co. v. Rickman*, 554 F.Supp.2d 766, 772 (N.D. Ohio 2008); *see also ReMedPar, Inc. v. AllParts Medical, LLC*, 683 F.Supp.2d 605, 614 (M.D. Tenn. 2010) (holding plaintiffs failed to state a claim under the CFAA as "lost revenue is only recoverable if it was incurred because of an 'interruption in service'").

The CFAA defines damages as "'the impairment to the integrity or availability' of data, programs, systems, or information." *Royal Truck & Trailer Sales and Service, Inc. v. Kraft*, 974 F.3d 756, 760 (6th Cir. 2020) (quoting 18 U.S.C. §1030(e)(8)). The CFAA further states that the term "loss" "speaks to the costs incurred by victims in responding to an offense, assessing damages, and restoring data, programs, systems, or information, as well as the costs incurred due to interrupted service." *Id.*

The Complaint lacks allegations establishing that Status Solutions suffered any damages or losses as defined under the statute. Status Solutions does not allege that Defendants' alleged act of accessing SARA interrupted Status Solutions' systems, impaired its data, required data restoration, or caused Status Solutions to expend more than $5,000 investigating Defendants' alleged actions. *American Family Mut. Ins. Co.,* 554 F.Supp.2d at 772 (explaining under the CFAA that "the loss of revenue must be related to the misuse of the Computer—something more than the misuse of information obtained from the computer through authorized access.") Because Status Solutions fails to allege recoverable losses under the CFAA, the CFAA claim should be dismissed.

### D. Status Solutions' State Law Claims Should be Dismissed.

Because dismissal of Status' Solutions federal claims is proper, the Court should decline to exercise jurisdiction over Status Solutions' state law claims for unfair competition, tortious interference with contractual relations, and tortious interference with business relations. "'[A] federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiff's federal claims.'" *Thomas v. Columbus City Schools*, S.D. Ohio No. 2:21-cv-1117, 2021 U.S. Dist. LEXIS 191629, at *12 (Oct. 5, 2021) (Morrison, J.) (quoting *Brown v. Cassens Transport Co.*, 546 F.3d 347, 363 (6th Cir. 2008) (citing 28 U.S.C. § 1367(c)(3)). As such, Defendants move the Court to dismiss Status Solutions' state law claims.

### E. The OUTSA Preempts Status Solutions' State Law Claims.

Should the Court proceed to consider the state law claims, dismissal remains proper because the OUTSA preempts those counts.

The OUTSA "displaces 'conflicting tort, restitutionary and other laws of [Ohio] providing civil remedies for misappropriation of a trade secret.'" *Keller N. Am., Inc. v. Earl*, N.D. Ohio No. 1:20-cv-2401, 2021 U.S. Dist. LEXIS 159201, at *10 (Aug. 24, 2021) (quoting Ohio Rev. Code §1333.67(A)). Accordingly, the Sixth Circuit directs "that the OUTSA should be understood to preempt not only causes of action for misappropriation of trade secrets but also causes of action that are based in some way on the misappropriation of trade secrets." *Stolle Machinery Co., LLC v. RAM Precision Industries,* 605 Fed. Appx. 473, 484 (6th Cir. 2015) (Gibbons, C.J.). Courts apply the following standard to a preemption challenge:

> The test to determine whether a state law claim is displaced by OUTSA is to determine whether the claims are no more than a restatement of the same operative facts that formed the basis of the plaintiff's statutory claim for trade secret misappropriation. Where the state-law claim has a factual basis independent from the facts establishing the OUTSA claim, the portion of the claim supported by an independent factual basis survives preemption.

*Id.* at 485 (internal citations omitted).

Each of Status Solutions' state law claims are rooted in Defendants purportedly accessing Status Solutions' software without permission and obtaining client information. Regarding its unfair competition claims, Status Solutions alleges that Defendants engaged in unfair tactics to compete with Status Solutions by "accessing Status Solutions' software without permission to download proprietary

client data….." (Cmpl., ¶ 53.) Status Solutions thus relies on the same operative facts as its misappropriation of trade secrets claims. The unfair competition claim is therefore preempted and should be dismissed.

The same is true of Status Solutions' tortious interference claims. For those counts, Status Solutions alleges that as a result of Defendants' alleged "unlawful access of Status Solutions' systems and intellectual property, at least three (3) of Status Solutions' clients terminated their maintenance agreements with Status Solutions." (*Id.* ¶ 22.) Similarly, when pleading its DTSA cause of action, Status Solutions alleges that Defendants continued to use Status Solutions' confidential information to "entice Status Solutions' clients to terminate their contracts with Status Solutions." (*Id.* ¶ 32.) Both tortious interference claims are rooted in the same operative facts as the misappropriation of trade secret claims and should be dismissed. *See Stolle Mach. Co.,* 605 F.App'x at 485 ("Stolle's claim for tortious interference with business relationships therefore essentially restates the operative facts of its claim for trade secret misappropriation under OUTSA, and it is preempted."). *See also Keller*, 2021 U.S. Dist. LEXIS 159201, at *17 (Aug. 24, 2021) (holding tortious interference with contract claim was preempted by OUTSA claim because "same operative facts" involved.) The tortious interference claims are therefore properly dismissed under *Stolle Mach. Co.* and *Keller.*

In sum, because Status Solutions' state law claims are premised upon the same operative facts as its trade secret claims, the state law claims are preempted and should be dismissed under Rule 12(b)(6).

### F. Status Solutions Fails to Allege the Requisite Elements of its State Claims.

Any attempt by Status Solutions to circumvent the preemption of its state law claims against Defendants fails as none of Status Solutions' state law claims state plausible claims for relief.

In order to establish tortious interference with contractual relations, Status Solutions must sufficiently allege the: (1) existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages. *North Canton Board of Education v. AT&T Inc.,* 5:16-cv-1420, 2017 WL 4430251, at *2 (N.D. Ohio Oct. 5, 2017).

Status Solutions' simple allegations that contracts existed and were interfered with are insufficient to satisfy those requirements. (Cmpl., ¶ ¶ 59-63.) Status Solutions fails to identify: (1) the parties to, and terms of, the contract allegedly interfered with; (2) how the contracts were breached; (3) the damages associated with each breached contract; and (4) that Defendants lacked justification to interfere. Those failures necessitate dismissal of the tortious interference with contractual relations claim under Civ.R. 12(b)(6). *Reynolds & Reynolds Co. v. Superior Integrated Solutions, Inc.,* No. 1:12-cv-848, 2013 WL 2456093, at *10 (S.D. Ohio June 6, 2013) (Rose, J.) (dismissing tortious interference with contract claim for failure to include those allegations).

The elements of tortious interference with a business relationship are: "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional

interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Westfall Auto Sales, LLC v. Zurich Am. Ins. Co.*, 6th Cir. No. 21-3126, 2021 U.S. App. LEXIS 34150, at *9-10 (Nov. 15, 2021) (citation omitted). Regarding the first element, the business relationship must be identified with specificity, as "[a] vague assertion that a party interfered with certain unspecified business relationships is insufficient to state a claim." *BCG Masonic Cleveland, LLC v. Live Nation Entertainment, Inc.*, 570 F.Supp.3d 552, 559 (N.D. Ohio Nov. 5, 2021) (Barker, J.) (dismissing tortious interference with business relationships claim for failure to identify specific business relationships with which the tortfeasor interfered).

In contravention of *BCG*, Status Solutions' Complaint fails to specifically identify the business relationships with whom Defendants supposedly prevented Status Solutions from engaging with. Dismissal of the tortious interference with business relationship is therefore proper under *BCG*.

Similarly, Status Solutions fails to properly state a claim for unfair competition. The tort of unfair competition in Ohio is grounded in "'preventing fraud on the public' by preventing deceptive trade practices." *Hua-Cheng Pan v. Kohl's' Dept. Stores, Inc.,* No. 2:12-CV-01063, 2013 WL 5181144, at *8 (S.D. Ohio Sept. 12, 2013) (Marbley, J.) (quoting *Drake Medicine Co. v. Glessner*, 68 Ohio St. 337, 67 N.E. 722, 727, 1 Ohio L. Rep. 393 (1903)). Thus, unfair competition typically consists of representations by one person, for the purpose of deceiving the public, that his goods are those of another. *AAA Installers v. Sears Holdings Corp.*, 764 F.Supp.2d

931, 943 (S.D. Ohio Jan. 10, 2011) (Rose, J.) (citation omitted). Other examples of unfair competition include "malicious litigation, circulations of false rumors, or publication of statements, all designed to harm the business of another." *Id.*

Here, Status Solutions does not allege that Defendants made misrepresentations to the public regarding Status Solutions nor does it allege that Defendants misrepresented their own services to be those of Status Solutions. Put simply, Status Solutions does not plead any relevant allegations to sustain its unfair competition claim. That count therefore fails to state a claim upon which relief can be granted and should be dismissed under Rule 12(b)(6).

In brief, Status Solutions' state law claims are preempted and insufficiently pled. They should be dismissed under Civ. R. 12(b)(6).

## III. CONCLUSION

Defendants respectfully request that the Court grant their Motion to Dismiss in its entirety, or in the alternative, grant Defendants' Motion for a More Definite Statement.

Respectfully submitted,

/s/ David J. Butler
David J. Butler (0068455), Trial Attorney
Amy D. Vogel (0075169)
TAFT STETTINIUS & HOLLISTER LLP
41 S. High Street, Suite 1800
Columbus, Ohio 43215-4213
Phone: (614) 221-2838
Fax: (614) 221-2007
dbutler@taftlaw.com
avogel@taftlaw.com

/s/ Thomas G. Pasternek
Thomas G. Pasternak*
Jani K. Mikel**
Akerman LLP
71 South Wacker Drive, 47th Flr.
Chicago, IL 60606
Phone: (312) 634-5700
Fax: (312) 424-1900
thomas.pasternak@akerman.coom
jani.mikel@akerman.com


* Admitted *pro hac vice*

** Seeking pro hac vice admission

*Counsel for Defendants 4Front Technologies, Ltd. and Shawn Tofte*

## CERTIFICATE OF SERVICE

I certify that on August 18, 2023, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system, which will send a notice of this electronic filing to all parties and counsel of record.

/s/ David J. Butler
David J. Butler
