**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Status Solutions LLC, | ) | |
| | ) | Case No. 2:23-cv-02047 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | District Judge Sarah D. Morrison |
| | ) | |
| 4Front Technologies, Ltd., *et al.*, | ) | Magistrate Judge Chelsey M. Vascura |
| | ) | |
| Defendants. | ) | |

<u>**STATUS SOLUTIONS LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS'**</u>
<u>**MOTION TO DISMISS OR IN THE ALTERNATIVE, MOTION FOR A MORE**</u>
<u>**DEFINITE STATEMENT**</u>

**I.       INTRODUCTION.**

Defendants 4Front Technologies, Ltd. and Shawn Tofte's (collectively, "Defendants")
Motion to Dismiss or in the Alternative, Motion for a More Definite Statement, ECF Doc.
# 9, ("Motion") should be denied because Defendants mischaracterize the underlying facts
and applicable pleading standards in an attempt to argue that Plaintiff Status Solutions LLC
("Status Solutions") did not put Defendants on notice of the claims brought against them.

Status Solution is not required to meet the unsupported heightened pleading standard
that Defendants attempt to impose on its Defend Trade Secrets Act ("DTSA") and Ohio
Uniform Trade Secrets Act ("OUTSA") claims. Furthermore, Status Solutions has sufficiently
pled the requisite loss necessary to sustain its Computer Fraud and Abuse Act ("CFAA")
claim. Moreover, Defendants' argument that the OUTSA preempts Status Solutions' state law
claims is without merit because such determinations are not suitable at this procedural
juncture. Lastly, Status Solutions has sufficiently pled the requisite elements of its unfair
competition, tortious interference with contractual relations, and tortious interference with

business relations claims. For these reasons, the Court should deny Defendants' Motion in its entirety.

As part of their Motion, Defendants request that the Court enter an order requiring Status Solutions to file a more definite statement if the Court does not dismiss the Complaint. However, this argument is without merit because the allegations contained in Status Solutions' Complaint meet the fair notice pleading standard set forth by Civ. R. 8(a). For this reason, Defendants' request for a more definite statement should be similarly denied.

## II.    FACTUAL BACKGROUND.

Status Solutions is a software solutions company specializing in technology and software solutions, services, and products for companies in various industries. [Compl.[1] at ¶ 2.] One of Status Solutions' main offerings is a unique software program called Situational Awareness and Response Assistant ("SARA"), which Status Solutions produces itself and licenses. [*Id.* at ¶ 3.] Defendants became a Value Added Reseller ("VAR") for Status Solutions when it entered into the VAR Agreement, authorizing Defendants to "market, sell, and install Status Solutions products to a targeted client base." [*Id.* at ¶ 4.] As a VAR, Defendants had access to Status Solutions' confidential and proprietary information, including its software, such as SARA, and its clients (the "Trade Secrets"). [*Id.* at ¶ 27.]

Due to Defendants' inability to act in the best interest of Status Solutions, Status Solutions terminated the VAR Agreement between Status Solutions and Defendants (collectively, the "Parties") on May 7, 2021. [*Id.* at ¶ 4.] Despite Defendants' representations, the reason behind Status Solutions' termination of the VAR Agreement is not relevant to the

---

[1] All references herein to "Compl." are to Plaintiff's Complaint filed on June 23, 2023 at ECF Doc. #1.

claims in this litigation – the misconduct underlying the claims brought by Status Solutions is not associated with the reason Status Solutions chose to terminate the VAR Agreement.

Since Status Solutions terminated the VAR Agreement, thereby cutting off any association Defendants may have with Status Solutions, Defendants have continued to unlawfully access Status Solutions' software and intellectual property, specifically SARA, to download information for several of Status Solutions' customers. [*Id.* at ¶ 6.] It is presumed that Defendants are engaging in such unlawful conduct because they are direct competitors of Status Solutions. [*See id.*] A screenshot of such unlawful activity was attached to the Complaint as Exhibit B. [*Id.* at Doc. # 1-3.]

On June 13, 2023, Status Solutions sent Defendants a cease and desist letter ("Cease and Desist Letter"), demanding that they immediately refrain accessing Status Solutions' proprietary software without authorization. [*Id.* at ¶ 9.] In this letter, which is attached as Exhibit A to the Complaint and incorporated therein, Status Solutions put Defendants on notice that it was aware that Defendants were accessing SARA and downloading file information for several Status Solutions customers, which ultimately led to three customers terminating their relationship with Status Solutions. [*Id.* at Doc. # 1-2.] Not only did Status Solutions specifically name the customer relationships with whom Defendants tortiously interfered, but it also provided a screenshot of one of the many instances where Defendants accessed Status Solutions' systems and Trade Secrets without authorization. [*Id.*] Status Solutions asked Defendants to confirm in writing that they would comply with the cease and desist demand and destroy or return all information that was stolen from Status Solutions. [*Id.*] Defendants failed to respond <u>in any way</u> to the Cease and Desist Letter. [*Id.* at ¶ 10.]

It is irrelevant that Status Solutions asked Defendants to confirm their compliance with the Cease and Desist Letter within three days, especially given the fact that Defendants ignored the Cease and Desist Letter entirely. After receiving no acknowledgment from Defendants, Status Solutions filed the present litigation ten days later, asserting the following claims: (1) violation of the Defend Trade Secrets Act; (2) violation of the Computer Fraud and Abuse Act; (3) violation of the Ohio Trade Secrets Act; (4) unfair competition; (5) tortious interference with contractual relations; and (6) tortious interference with business relations.

## III.   LAW AND ARGUMENT.

### A.   Standard Of Review.

When deciding a Rule 12(b)(6) motion, the Court must accept all well-pleaded, material allegations as true and view the complaint the in light most favorable to the plaintiff. *Hivner v. Active Elec., Inc.*, 878 F. Supp. 2d 897, 900 (S.D. Ohio 2012). "When the complaint does contain well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Comer v. Directv, LLC*, No. 2:14–cv–1986, 2016 WL 853027, at *3 (S.D. Ohio Mar. 4, 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotations omitted). The "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mullins v. Internal Revenue Service*, No. 3:15–cv–106, 2015 WL 5916347, at *2 (S.D. Ohio Oct. 9, 2015) (internal citations and quotations omitted).

While the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level," particular details is not necessary to survive a motion to dismiss. *Chen v. GSC Opportunities, L.P.*, No 1:17–cv–460, 2021 WL 4479482, at *2 (S.D. Ohio Sept. 30, 2021) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)). The pleadings must

give the defendant fair notice of the claims alleged against it and the grounds for such claims, but the plaintiff does not need to plead specific facts. *See A.M.S. v. Steele*, No 1:11–cv–298, at *1 (S.D. Ohio June 8, 2012).

### B. Status Solutions Plead Sufficient Facts Setting Forth Defendants' Misappropriation Of Its Trade Secrets To Sustain Its DTSA And OUTSA Claims.

Defendants' argument that Status Solutions failed to plead its DTSA and OUTSA claims at this procedural juncture relies solely on an incorrect heightened pleading standard that directly contravenes applicable law. Status Solutions has satisfied the pleading requirements set forth by Civ. R. 8(a) and the standards set forth by the Supreme Court in *Iqbal* and *Twombly*. *See Ashcroft v. Iqbal*, *supra,* 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, *supra*, 550 U.S. 544(2007). Therefore, Defendants' request to dismiss Status Solutions' DTSA and OUTSA claims must be denied.

In its Complaint, Status Solutions sufficiently alleged the existence and identity of its Trade Secrets and detailed some of the steps it has taken to protect them, including requiring Defendants to sign an agreement containing an extensive confidentiality provision establishing the confidential relationship between the Parties. Finally, Status Solutions' allegation that it terminated its contract and relationship with Defendants years prior to this lawsuit certainly demonstrates that Defendants lacked the requisite authorization to access and use Status Solutions' trade secrets. [*See, e.g.*, Compl. at ¶¶ 17, 18, 19, 27, 29, 31.]

Courts address DTSA and OUTSA claims together because they are "similar in scope and contain nearly identical definitions of statutory terms . . .". *Ridge Corp. v. Altum LLC*, No. 2:21–cv–5915, 2023 WL 1765918, at *2 (S.D. Ohio Feb. 3, 2023) (denying the defendant's 12(b)(6) motion to dismiss the plaintiff's DTSA and OUTSA claims because the plaintiff's

allegations sufficiently identified its trade secrets). In order to adequately plead a DTSA claim, Status Solutions was required to plead the following elements: (1) the existence of a protectable trade secret and (2) the misappropriation of the trade secret by Defendants. *See Corp. Bertec v. Sparta Software Corp.*, No. 2:19–cv–4623, 2020 WL 2112162, at *7 (S.D. Ohio May 4, 2020) (finding that the plaintiff pled its claims for misappropriation of trade secrets sufficient to withstand the defendant's motion to dismiss). Similarly, the allegations in Status Solutions' Complaint set forth a claim under OUTSA, which requires allegations of "(1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Id.*

As set forth below, Status Solutions has plead the existence of its trade secrets sufficient to survive a Civ. R. 12(b)(6) motion by detailing its highly proprietary information of its software program SARA and its clients. [Compl. at ¶¶ 3, 27.][2] Therefore, Defendants' Motion should be denied.

### 1. Status Solutions Sufficiently Identified The Trade Secrets Defendants Misappropriated.

Considering the allegations in the light most favorable to the non-moving party, Status Solutions satisfied the requisite pleading standards in identifying the trade secrets that are the subject of Defendants' actual and threatened misappropriation.

---

[2] Whether Status Solutions' proprietary software and clients constitute a trade secret is a "highly fact-specific inquiry" that courts will not resolve at the motion to dismiss stage of proceedings. *See More than Gourmet, Inc. v. Finnegan*, No. 5:18–cv–2509, 2019 WL 13199822, at *8 (N.D. Ohio Sept. 10, 2019) (finding that the determination of whether the information constitutes a trade secret "is not suited to resolution on a motion to dismiss and is best determined after the parties have had the opportunity to conduct discovery.")

Although a plaintiff must "do more than allege that it had a secret," Status Solutions is not required to "spell out the details of its trade secret[s] to avoid dismissal." *Ridge Corp.*, 2023 WL 1765918, at *3 (recognizing that "[b]eyond those outer boundaries, however, deciding whether a plaintiff has sufficiently disclosed its trade secrets is a fact-specific question to be decided on a case-by-case basis.") (internal citations omitted). In *Ridge Corp.*, this Court found that the plaintiff gave the defendants sufficient notice of the trade secrets that were misappropriated because the plaintiff identified the product and its technology that the defendants misappropriated. *Id.* Defendants misinterpret the standard set forth in *Ridge Corp.* because the Court held that the plaintiff was required to identify its trade secrets with "specificity to separate the secret from general knowledge" when information is "generally known, publicly available, or readily ascertainable by skilled individuals" in a similar field. *See id*. This is not the case here – Status Solutions' Trade Secrets are its proprietary software (*i.e.* SARA) and its clients, neither of which are generally known, publicly available, or readily ascertainable by other skilled individuals outside of Status Solutions.

Despite Defendants' mischaracterization of the applicable law, Status Solutions is not required to identify its Trade Secrets with the specificity that Defendants claim is required. In bringing DTSA and OUTSA claims, plaintiffs do not need to "identify trade secret information in detail in order to avoid dismissal at the 12(b)(6) stage." *More than Gourmet*, 2019 WL 13199822, at *6 (emphasis added). The rationale behind this lesser pleading standard is that while a plaintiff must identify its trade secrets underlying its claims, it made do so in a general manner so it can avoid publicly disclosing proprietary information in court filings. *See id*. (relying upon *Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc.*, No. 1:17–cv–1136, 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017)).

In *More than Gourmet*, the Court recognized that with respect to both the DTSA and state law claims, the plaintiff has satisfied its pleading requirements to withstand a Civ. R. 12(b)(6) motion if it can "put forth general categories of its trade secrets and provide the type of factual allegations . . . that allow for the reasonable inference that [the defendants] improperly disclosed some of its trade secrets." *Id*. at *6 (internal citations and quotations omitted). In that case, the Court held that the plaintiff sufficiently identified the trade secrets to survive the motion to dismiss because the plaintiff identified several categories of confidential, proprietary information including the identities of the plaintiff's customers and its product information. *Id.* at *5.

Ultimately, Status Solutions' Complaint only needs to contain allegations that are sufficient to give Defendants fair notice of the claims brought against them and the underlying bases for the claims. *See Cincom Sys., Inc. v. LabWare, Inc.*, 1:20–cv–83, 2021 WL 675437, at *4 (S.D. Ohio Feb. 22, 2021) (rejecting the defendant's "heightened specificity" pleading argument). In *Cincom Sys. Inc.*, this Court found that the plaintiff's pleading contained sufficient allegations to survive the motion to dismiss because it identified the trade secret at issue by including the software by name, described how the defendant became aware of the software, and even notified the defendant of its improper use and made attempts to resolve the issue.

Similarly here, Status Solutions specifically identified its Trade Secrets – its clients and proprietary software, including SARA. [Compl. at ¶¶ 3, 27.] Status Solutions also detailed how Defendants became knowledgeable about Status Solutions' clients and proprietary software by becoming a VAR, thereby allowing Defendants to market, sell, and install Status Solutions' products and work with Status Solutions' clients. [*Id.* at ¶ 4.] As Defendants

concede, they signed the VAR Agreement establishing the relationship between the Parties that allowed Defendants to permissibly access Status Solutions' Trade Secrets before the VAR Agreement was terminated by Status Solutions. [ECF Doc. # 9, PageID # 41.] Finally, prior to filing this litigation, Status Solutions sent the Cease and Desist Letter notifying Defendants of their unauthorized access and use of Status Solutions' Trade Secrets, requesting Defendants to immediately refrain from engaging in further misconduct. [Compl., Ex. A at ECF Doc. # 1-2.] Therefore, Status Solutions has sufficiently identified its Trade Secrets that Defendants misappropriated.

### 2. Status Solutions Sufficiently Identified The Measures It Took To Protect Its Trade Secrets.

Defendants' arguments that Status Solutions failed to identify the steps it took to protect its Trade Secrets is belied by the VAR Agreement that Defendants themselves attach to their Motion as Exhibit A, as detailed below. [*See* ECF Doc. # 9-1.] Furthermore, Status Solutions has sufficiently alleged steps it has taken to safeguard its Trade Secrets, including requiring Defendants to sign the VAR Agreement that includes an extensive confidentiality clause. [Compl. at ¶ 29.]

In *Ridge Corp.*, the plaintiff took specific steps to protect its trade secrets, including limiting the availability of the information to specific people and having policies in place through the employee handbook prohibiting its employees from disclosing proprietary information learned during the course of their contractual relationship. *Ridge Corp.*, 2023 WL 1765918, at *3. Here, Status Solutions limited access to its Trade Secrets to a select group of people, including VARs, who were required to sign agreements containing confidentiality provisions prohibiting them from disclosing and using Status Solutions' Trade Secrets without permission.

Defendants feign ignorance by arguing that they were required to sign "unspecified confidentiality agreements," yet attach and rely upon the very confidentiality agreement they are bound by to their Motion. [*See* ECF Doc. #9, PageID # 45.] Defendants do not dispute that the VAR Agreement contains a confidentiality clause, specifically included to protect Status Solutions' Trade Secrets—and the allegation is contained in the Complaint. [Compl. at ¶ 29.] The VAR Agreement contains the following confidentiality provision:

> Each party hereto agrees that any information, technology, technical data, <u>trade secrets</u>, know-how or ideas, including, without limitation, that which relates to business operations, <u>products</u>, (including the Products), services <u>customers</u>, (including the Customers), markets, research, inventions, processes, designs, drawings, engineering, marketing or finances of the disclosing party (hereinafter collectively, the "Confidential Information"), is intended to be treated as confidential and not disclosed under any circumstances.

[ECF Doc. #9-1, ¶ 8(a).] (emphasis added).

In addition to the confidentiality provision that Defendants agreed to when executing the VAR Agreement, Status Solutions' Complaint certainly identifies some of the steps it took in protecting its Trade Secrets. Status Solutions entered into the VAR Agreement with Defendants, authorizing them to market, sell, and install various Status Solutions' products, including its proprietary SARA software. [Compl. at ¶ 17.] That VAR Agreement contains a explicit confidentiality clause. [*Id.* at ¶ 29.] Status Solutions also alleges that it has spent significant time and resources to developing its Trade Secrets, which are not ascertainable through proper means and difficult for its competitors, like Defendants, to duplicate without authorization. [*Id.*] These allegations are sufficient to demonstrate the steps Status Solutions took to protect its Trade Secrets from unauthorized access and use similar to Defendants' misconduct. *See Shepard and Assoc., Inc. v. Lokring Tech., LLC*, No. 1:20–cv–02488, 2022 WL 2398392, at *6 (N.D. Ohio July 1, 2022) (finding that the party pled the first element of its

misappropriation of trade secrets claim – the existence of a trade secret– partly by alleging that it took reasonable steps to protect its trade secret information by requiring anyone with access to the information to sign a non-disclosure agreement; recognizing that whether information constitutes a trade secret is "a question of fact to be determined by the trier of fact upon the greater weight of the evidence.") (internal citations and quotations omitted). For these reasons, Defendants' argument that Status Solutions has not taken reasonable measures to protect its Trade Secrets fails.

### 3. Status Solutions Established The Confidential Relationship It Had With Defendants That Provided Them With Access To Its Trade Secrets.

Defendants' argument that Status Solutions neglected to establish that they acquired the Trade Secrets through a confidential relationship is undermined not only by Status Solutions' allegations in the Complaint concerning the execution of the VAR and the Parties' relationships [Compl at ¶ 17], but also the VAR Agreement referenced in the Complaint and attached to Defendants' Motion. Furthermore, Defendants argue that Status Solutions must have had a confidential relationship with Defendants at the time of the misappropriation, without a single citation to case law supporting this purported principle. [*See* ECF Doc. # 9, PageID # 46.]

In *Apex Tool Group, LLC v. DMTCO, LLC*, the Court, making all reasonable inferences in favor of the non-moving party, found that the parties had a confidential relationship that was established partly by the signed confidentiality agreements between the defendants and the plaintiff's predecessors-in-interest, whereby the defendants agreed to not disclose the described confidential information. No. 3:13–cv–372, 2014 WL 6748344, at * 14–15 (S.D. Ohio Nov. 26, 2014) (denying the defendants' motion to dismiss). In that case, the individual defendants signed these confidentiality agreements when they were employees of the

plaintiff's predecessor but disclosed the confidential information after the termination of their employment relationship with the plaintiff.

Here, Defendants signed the VAR Agreement containing a confidentiality provision prohibiting them from disclosing and using Status Solutions' confidential information, which explicitly includes its Trade Secrets and customers. [*See* ECF Doc. # 9-1, ¶ 8(a).] Status Solutions specifically states that the Parties entered into the VAR Agreement that ultimately granted Defendants access to Status Solutions' Trade Secrets. [Compl. at ¶ 17.] The Complaint also alleges that Defendants gained knowledge of and access to Status Solutions' Trade Secrets as a result of Defendants' confidential relationship with Status Solutions. [*Id.* at ¶¶ 4, 17.] Therefore, Status Solutions has sufficiently pled the existence of a confidential relationship between the Parties that allowed Defendants to gain access to Status Solutions' Trade Secrets.

### 4. Status Solutions Sufficiently Alleges That Defendants Lacked Authorization To Access Its Trade Secrets.

Status Solutions alleges that Defendants lacked authorization to access its Trade Secrets, as illustrated through the termination of the VAR Agreement by Status Solutions and the Cease and Desist Letter. [Compl. at ¶¶ 5-6, Ex. B at Doc. # 1-3.]

Defendants lost authorization to access and use the Trade Secrets on May 7, 2021, when Status Solutions provided Defendants with notice that the contractual relationship was terminated and instructed Defendants to immediately stop accessing its Trade Secrets and using Status Solutions' proprietary property. [*Id.* at ¶ 18.] Defendants' argument that Status Solutions has not provided any facts establishing the details of Defendants' unauthorized access and use of the Trade Secrets completely ignores the allegations in the Complaint. The Cease and Desist letter and the Complaint provide a screenshot that is but one example of the

instances where Defendants logged into Status Solutions' systems, <u>after the relationship was</u> <u>terminated</u>, and requested and completed a file transfer of information including Status Solutions' Trade Secrets. Moreover, although Status Solutions is not required to allege why Defendants unlawfully accessed its Trade Secrets (despite Defendants' contentions otherwise), the Complaint contains allegations that Defendants accessed Status Solutions' systems and stole information they had no right to access presumably because the Parties are competitors. [Compl. at ¶¶ 6, 23.] Surely Defendants are not arguing that they were permitted to gain knowledge of Status Solutions' proprietary software and clients (including login and access information for the software), and then continue to log into the software and download information related to the software and clients <u>after it was terminated as a VAR</u> and <u>after it</u> <u>was told to immediately cease use of all Status Solutions' intellectual property</u>. [*Id.* at ¶ 18.]

For these reasons, Status Solutions has demonstrated that Defendants lacked authorization to access Status Solutions' Trade Secrets and Defendants' Motion must be denied.

**C.   Status Solutions' Complaint Satisfies The Pleading Requirements Under Rule 8 And Provides Defendants With Fair Notice Of The Claims Against Them; Therefore, Defendants' Alternative Request For A More Definite Statement Should Be Denied.**

Defendants' argument that the Complaint does not provide them with fair notice of the claims brought against them is without merit. Status Solutions has satisfied the pleading requirements set forth under Rule 8(a) and is not subject to any heightened pleading standard.

Civ. R. 12(e) motions for more definite statements are generally disfavored by courts. *Innovative Digital Equip. Inc. v. Quantum Tech. Inc.*, 597 F. Supp. 983, 989 (N.D. Ohio 1984) ("Rule 12(e) motions for more definite statements are not to be used as a substitute for discovery;" finding that there was no "inherent vagueness" in the plaintiff's complaint that

13

prevented the defendant from filing a responsive pleading and denying the defendant's Civ. R. 12(e) motion). Civ. R 12(e) motions are "designed to strike at unintelligibility rather than simple want of detail . . . [It] must be denied where the subject complaint is not so vague or ambiguous as to make it unreasonable to use pretrial devices to fill any possible gaps in detail." *Stark v. Gov't. Acct. Solutions, Inc.*, No. 2:07–cv–755, 2008 WL 2796499, at \*5 (S.D. Ohio July 17, 2008) (internal citations omitted).

Civ. R. 8(a) sets forth the "notice pleading" standard that does not require the movant to provide in detail the facts upon which his claims are based; all that is required is a "short and plain statement of the claim" that provides the defendant with fair notice of the plaintiff's claims and the "grounds upon which it rests." *Id*. (internal citations and quotations omitted). The notice pleading standard can be satisfied through either direct or inferential allegations. *Id*.

As detailed herein, Status Solutions sufficiently alleged what Trade Secrets were misappropriated, who was responsible for the misappropriation (Defendants), and the manner in which the misconduct occurred. [*See generally* Compl.] Not only did Status Solutions provide such detail in its Complaint, but it also identified in its Cease and Desist Letter the specific clients whose accounts Defendants accessed without authorization.

Defendants' argument that it is unclear whether Status Solutions owns these Trade Secrets falls flat when simply considering the allegations in the Complaint. Status Solutions states that it "produces and licenses" its proprietary software, SARA, and that Defendants entered into the VAR Agreement to market, sell, and install "Status Solutions products." [*Id.* at ¶¶ 3–4.] Defendants once again ignore the allegations in the Complaint and the exhibits attached thereto; the clients whose accounts Defendants accessed without authorization are

listed in the Cease and Desist letter that is attached to and incorporated into the Complaint.[3] [Compl. Ex. A at ECF Doc. #1-2.]

Defendants argue that Status Solutions has not sufficiently pled its DTSA and OUTSA claims necessary to put Defendants on fair notice of the claims despite receiving communications outlining the same prior to the filing of this lawsuit.[4] Status Solutions' well-pleaded facts, in conjunction with the Cease and Desist letter that is attached as Exhibit A to the Complaint was sent to Defendants prior to the filing of this action, certainly provide Defendants with fair notice of the DTSA and OUTSA claims brought against them. Therefore, Defendants' request for a more definite statement should be denied.

### D. Status Solutions Sufficiently Established The Requisite Damages To Support Its CFAA Claim.

Status Solutions has alleged damages sufficient to satisfy the five thousand dollars threshold under the CFAA to maintain its claim against Defendants.

Pursuant to the CFAA, in order to state a civil claim, it must be alleged that Defendants' access to Status Solutions' systems was either unauthorized, or exceeded the permitted authorization, and that as a result of this impermissible access, the plaintiff suffered

---

[3] When ruling on a Civ. R. 12(b)(6) motion, the Court "must limit itself to the facts stated in the complaint or in the documents attached to the complaint as exhibits or incorporated into the complaint by reference." *Hua-Cheng Pan v. Kohl's Dept. Stores, Inc.*, No. 2:12–cv–1063, 2013 WL 5181144, at *2 (S.D. Ohio Sept. 12, 2013) (emphasis added); *see also Howards v. Fifth Third Bank.*, No. 1:18–cv–869, 2023 WL 1778522, at *6 (S.D. Ohio Feb. 6, 2023) (recognizing that the Court can "consider exhibits attached to the complaint. . . and exhibits attached to [the] defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment.") (internal citations and quotations omitted) (emphasis added).

[4] Defendants only request a more definite statement pursuant to Civ. R. 12(e) for the DTSA and OUTSA claims and therefore, Status Solutions will only address this argument as to these two claims.

a loss of at least five thousand dollars. *See* 18 U.S.C.A. § 1030. Defendants do not address and therefore impliedly concede that their access to Status Solutions' systems was unauthorized.

According to the statute, "loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* at § 1030(e)(11).

Status Solutions incurred significant costs as a result of Defendants' misconduct in addition to the damages related to its clients' termination of their contracts. [Compl. at ¶¶ 40–42.] As referenced in the Cease and Desist letter, Defendants accessed Status Solutions' systems without authorization on more than one occasion. [Compl. at Ex. A, ECF Doc. # 1-2.] Status Solutions only provided one screenshot of Defendants' misconduct as an example, but spent time and resources monitoring Defendants' activity on its systems and maintaining the integrity of its system. *See Jedson Engineering, Inc. v. Spirit Constr. Servs., Inc.*, No. 1:08–cv–413, 2010 WL 11538008, at *6 (S.D. Ohio Mar. 17, 2010) (denying the defendant's motion to dismiss and finding that damages associated with maintaining the confidentiality and integrity of a system constitute a "loss" under the CFAA.)

Not only did Status Solutions spend resources monitoring its system, but as part of responding to the incident, it spent resources seeking advice and engaging counsel to send the Cease and Desist Letter. [*See* ECF Doc. #1-3.] For these reasons, Status Solutions has sufficiently pled damages in excess of five thousand dollars and the Court should deny the Motion.

### E.    Status Solutions' State Law Claims Are Not Preempted By OUTSA.

Status Solutions has adequately pled its federal claims and therefore dismissal of Status Solutions' state law claims is not justified. Status Solutions' state law claims of unfair competition, tortious interference with contractual relations, and tortious interference with business relations stand on their own because the facts underlying these claims are not predicated on the facts underlying the OUTSA claim.

"[A] court may not dismiss claims as preempted until the parties have had a chance to develop the facts during discovery to assess whether facts different from those compromising the misappropriation claim support the [sic] common law state claims." *Corp. Bertec*, 2020 WL 2112162 at *8 (internal citations and quotations omitted); *see Int'l. Petroleum Prods. and Additive Co., Inc v. PXL Chem. BV*, No. 1:20–cv–586, 2022 WL 4537974, at *14 (S.D. Ohio Sept. 28, 2022) (holding that defendant's argument that OUTSA preempted the state law claims was premature because plaintiff did not have the opportunity to demonstrate that its state law claims were based on facts different from the misappropriation claim). In order to determine whether the OUTSA preempts conflicting tort claims that provide civil remedies for the misappropriation of trade secrets, courts will consider whether the claims are "no more than a restatement of the same operative facts that formed the basis of the plaintiff's statutory claim for trade secret misappropriation." *Corp. Bertec,* 2020 WL 2112162 at *8 (citing *Stolle Mach. Co., LLC v. RAM Precisions Indus.*, 605 Fed. Appx. 473, 485 (6th Cir. 2015) (internal quotations omitted). In *Corporation Bertec*, the Court found that dismissal of the state law claims was inappropriate at the motion to dismiss stage because it was unclear whether discovery would allow the plaintiff to base its state law claims on facts different from those

underlying the trade secret claim. *Id.* (recognizing that a plaintiff may plead its claims in the alternative").

Aside from the fact that Defendants' argument is premature, it is also without merit – the facts underlying Status Solutions' three state law claims are different from the facts underlying its misappropriation of trade secrets claims. Therefore, Defendants' Motion should be denied.

**F. Status Solutions' State Law Claims Are Sufficiently Plead And Should Not Be Dismissed.**

      **1. Status Solutions Pled The Necessary Elements For Its Unfair Competition Claim.**

First, Defendants apply a narrow interpretation of what constitutes unfair competition to suggest that Status Solutions' claim should be dismissed. The unjust enrichment claim brought against Defendants arises out of the confusion regarding Status Solutions' offerings as a result of Defendants' misconduct. [Compl. at ¶ 55.]

Ohio's common law contains several variations of an unfair competition claim. *See NCR Corp. v. Korala Assoc., Ltd.*, 512 F. 3d 807, 818 (6th Cir. 2008); *see StarForce Nat'l Corp. v. Transcor, Inc.*, No. 1:10–cv–084, 2010 WL 11639831, at *7 (S.D. Ohio Dec. 15, 2010). In *StarForce Nat'l Corp.*, the Court held that although the tort of unfair competition usually consists of misrepresenting the public that his goods are those of another, the concept of unfair competition extends to "commercial practices such as malicious litigation, circulation of false rumors, or publication of statements, all designed to harm the business of another." (internal citations and quotations omitted). A claim for unfair competition can also arise where a person "on or in connection with any goods or services, . . . uses in commerce any word, term, name . . . false or misleading description of fact, or false or misleading

representation of fact, <u>in a manner that is likely to cause confusion</u>." *MMK Grp., LLC v. SheShells Co., LLC*, 591 F. Supp.2d 944, 960 (N.D. Ohio 2008) (emphasis added).

Here, Status Solutions specifically alleges that Defendants' actions "have caused considerable confusion amongst Status Solutions' clients regarding Status Solutions' offerings." [Compl. at ¶ 55.] This is especially concerning because Defendants have accessed Status Solutions' systems not just once, but *multiple* times, to presumably "gain a competitive advantage because [Defendant] 4Front Technologies is a competitor of Status Solutions." [*Id.* at ¶ 23.] Thus, Status Solutions has plead facts sufficient for its unfair competition claim to survive the Motion.

### 2. Status Solutions Pled The Necessary Elements For Its Tortious Interference With Contractual Relations Claim.

Status Solutions has similarly sufficiently pled the necessary elements for its tortious interference with contractual relations claim against Defendants. To establish a claim for tortious interference with contractual relations, Status Solutions must demonstrate the following elements: (1) the existence of a valid contract; (2) Defendants' knowledge of the contract; (3) Defendants' intentional procurement of the contract's breach; (4) the lack of justification; and (5) damages. *Cap. Senior Living, Inc. v. Barhniser*, No. 3:22–cv–606, 2022 WL 6156860, at *8 (N.D. Ohio Oct. 7, 2022) (citing *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999)) (denying the defendant's motion to dismiss the tortious interference with contractual relations claim).

Status Solutions alleged the existence of valid contracts with its customers, in the form of maintenance agreements, and that is sufficient to satisfy the first element. [Compl. at ¶ 7.] Defendant undoubtedly had knowledge of these maintenance agreements in their former role as VAR for Status Solutions, which granted Defendants access to Status Solutions' clients to

market, sell, and install Status Solutions products, and therefore, the second element is satisfied. [*Id.* at ¶ 4.] Defendants intentionally procured the breach of those maintenance agreements by enticing Status Solutions' clients to terminate their maintenance agreements with Status Solutions and lacked justification to do so, given that Status Solutions terminated its contract with Defendants years prior to the filing of this lawsuit. [*Id.* at ¶ 61.] Lastly, Status Solutions was damaged by Defendants' tortious interference because at least three (3) customers have terminated their maintenance agreements with Status Solutions as of the date of filing the Complaint.[5] [*Id.* at ¶¶ 9, 22.]

For these reasons, Status Solutions has pled a claim for tortious interference with contractual relations and Defendants' Motion must be denied.

### 3. Status Solutions Pled The Necessary Elements For Its Tortious Interference With Business Relations Claim.

Similarly, Status Solutions has pled the necessary elements to sustain its tortious interference with business relations claim. To establish a claim for tortious interference with business relations, a plaintiff must establish five things: (1) the existence or prospect of a business relationship; (2) the defendant knew of the plaintiff's relationship; (3) the defendant intentionally and materially interfered with the plaintiff's relationship; (4) the interference was without justification; and (5) the interference cause[d] the plaintiff to suffer damages. *Wilson v. Chagrin Valley Steel Erectors, Inc.*, No. 2:16–cv–1084, 2018 WL 1512906, at *15 (S.D. Ohio Mar. 27, 2018).

---

[5] Although the Complaint alleges that three clients of Status Solutions have terminated their maintenance agreements due to Defendants' unlawful actions, the total has now risen to five (5) clients—all of the clients listed in the Cease and Desist Letter and who are referenced in Paragraph 21 of the Complaint.

As demonstrated above, business relationships between Status Solutions and its customers existed in the form of maintenance agreements for Status Solutions' products. [Compl. at ¶ 7.] Defendants were aware of these relationships because of their contractual relationship with Status Solutions as a VAR and Defendants used the knowledge they gained as a VAR to access Status Solutions' systems to download these clients' information. [*Id.* at ¶¶ 4, 20-23.] It is well-established in the Complaint that Defendants intentionally and materially interfered with Status Solutions' relationships with its customers by enticing Status Solutions' clients to terminate their relationships with Status Solutions and lacked justification to do so, given that Defendants were no longer representing Status Solutions as a VAR. [*Id.*] Lastly, Defendants' unjustified and tortious interference with Status Solutions' relations with its customers resulted in clients terminating their relationships with Status Solutions, amongst other damages.

Accordingly, Status Solutions has sufficiently pled the requisite elements for its tortious interference with business relations claim and the Court should deny Defendants' Motion.

## IV.    CONCLUSION.

Despite Defendants' consistent mischaracterization of the applicable law and pleading standards, Status Solutions has pled sufficient facts regarding Defendants' violation of federal and state trade secret laws, violation of the CFAA, direct interference with Status Solutions' customers and contracts, and engagement in unfair competition tactics. Furthermore, Status Solutions has pled allegations well beyond the fair notice standard set forth by Civ. R. 8(a) and therefore, Defendants' request for a more definite statement should be denied. For the aforementioned reasons, Status Solutions respectfully requests that the Court deny

Defendants' Motion in its entirety.  If the Court chooses to grant Defendants' Motion, Status Solutions respectfully requests leave to file an Amended Complaint.

Respectfully submitted,

*/s Nicole R. Woods*
Nicole R. Woods (0084865)
Kishala Srivastava (0098807)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, OH 43215
P: (614) 462-2700
F: (614) 462-5135
Nicole.Woods@icemiller.com
Kishala.Srivastava@icemiller.com
*Counsel to Plaintiff Status Solutions LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties who have appeared in this action via the Court's electronic filing system.

*/s Nicole R. Woods*
Nicole R. Woods